1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   EDWARD AARON,                          Case No.  1:24-cv-00372-KES-BAM

12                 Plaintiff,
                                            **FINDINGS AND RECOMMENDATIONS
13          v.                              REGARDING PLAINTIFF'S MOTION FOR
                                            SUMMARY JUDGMENT**
14   LELAND DUDEK, Acting Commissioner
     of Social Security,[1]                 (Docs. 10, 14)
15
16                 Defendant.

17

18

19                          **<u>INTRODUCTION</u>**

20          Plaintiff Edward Aaron ("Plaintiff") seeks judicial review of a final decision of the

21   Commissioner of Social Security ("Commissioner") denying his application for Supplemental

22   Security Income under Title XVI of the Social Security Act.  The parties' briefing on the motion was

23   submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and

24   recommendations.  (Docs. 10, 14.)  Having considered the parties' briefs, along with the entire record

25   in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") was not

26   ────────────────────

27   [1] Leland Dudek became the Acting Commissioner of Social Security in February 2025.
     Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michelle King is substituted
28   for Martin O'Malley as Defendant in this suit.

                                           1

supported by substantial evidence in the record and was not based upon proper legal standards. Accordingly, this Court will recommend reversing the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff applied for Title XVI Supplemental Security Income on September 27, 2021, alleging that he became disabled on January 7, 2007.  AR 253-262.[2]  The claim was denied initially on February 16, 2022, and on reconsideration on September 19, 2022.  AR 123, 147.  Plaintiff requested a hearing before an administrative law judge ("ALJ") and ALJ Scot Septer held a hearing on May 11, 2023.  AR 44-65.  ALJ Septer issued an order denying benefits on the basis that Plaintiff was not disabled on July 6, 2023.  AR 18-43.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied.  AR 5-10.  This appeal followed.

**May 11, 2023 Hearing Testimony**

ALJ Septer held a telephonic hearing on May 11, 2023.  AR 44-65.  Stephen Schmidt, an impartial vocational expert, also appeared and testified.  Plaintiff's attorney Irene Ruzin was also present.  The ALJ began by confirming Plaintiff's identity and Plaintiff's attorney confirmed that the record was complete and that there were no objections.  AR 46-48.  The ALJ then entered Exhibits B-1A through B-10F into evidence.  AR 48.  Plaintiff's attorney Ms. Ruzin opened by noting that Plaintiff was 60 years old, had the equivalence of a high school education and no prior work, and was unable to work due to severe pain in his back, legs, feet, migraine headaches, and mental impairments. AR 49-50.  Ms. Ruzin further noted that Plaintiff does not receive mental health treatment and had issues with bladder emptying.  AR 50.  She said that he was treated at Sequoia Medical Center and that *Chavez* would not apply because Plaintiff's medical conditions had worsened since the prior hearing.  *Id.*  She argued that given Plaintiff's advanced age, education, lack of past relevant work, and light RFC, he would grid out as of the protective filing date under 202.04.  *Id.*

Upon examination by the ALJ, Plaintiff stated that his current address was 720 East Worth Avenue, Space 73, Porterville, California, 93257, and that he lived with his cousin, his nephew, and

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

his nephew's girlfriend.  AR 50.  Plaintiff testified that he graduated high school and received a graduation diploma and GED, and that the last work he performed was in 2005 or 2006.  AR 50-51. He said that he had not worked full time in the past 15 years, and the ALJ noted that he would not ask the VE for a categorization of past work.  AR 51.  Plaintiff testified that he has been unable to work because of the "multiple scoliosis on his upper back."  *Id.*  Plaintiff said that he was not receiving any therapy or medications as to lower back pain.  AR 52.  He stated that his lower back would throb with pain if he stood for more than 20 to 30 minutes and if he sat for more than 20 to 30 minutes without moving.  *Id.*  Plaintiff testified that on a typical day he would watch TV inside at his home and would help clean up, though cleaning took him longer to accomplish.  AR 52-53.  He said that he would wash dishes, but that would take him longer because he would need to stand and then sit and rest.  AR 53. Plaintiff stated that he would also color in his coloring book.  *Id.*  He also said that he did not do things outside of his home because he did not like "going out… where there's a whole lot of people" and had felt that way for "Quite a period of time."  AR 53-54.  Plaintiff said that he would also spend time with his sister and niece when they came over.  AR 54.

Plaintiff stated that he did not have a driver's license but previously had a driver's license that expired.  AR 54.  He said that he had experienced a seizure but could not recall when the last seizure he had occurred.  *Id.*  Plaintiff said that he also took pills every morning and evening for diabetes.  AR 55.  The people he lived with would remind him to take his medications.  *Id.*  He testified that he experienced manic depression but was not being treated for that, though he went to a class for it a few years prior to the hearing.  *Id.*  He said that he had never been on medications for manic depression. AR 56.  Plaintiff stated that he would read occasionally, but it was not a common hobby.  *Id.*  He further testified that he took medication for high blood pressure.  *Id.*  Plaintiff said that the diabetes was not currently affecting his hands, feet, or the rest of his body.  *Id.*  Plaintiff testified that he experienced pain in his legs and knees, and that his knees would unlock and cause him to fall.  *Id.*  He said that this had not happened recently because he sat down and took his time moving, and had not received medical treatment for that pain.  AR 56-57.  Plaintiff testified that he had "massive migraines" and would paralyze him and prevent him from walking or doing anything else.  AR 57.  He said that he took Tylenol or ibuprofen for it.  *Id.*  He also stated that he experienced the migraines

3

every few months but previously had those migraines weekly. *Id.* Plaintiff said that lifting something too heavy would cause the migraines. *Id.* He stated that he could lift a gallon of milk weighing eight to nine pounds but could not move it too far or get it out of the car, as it would weigh him down and he would need to sit down and have someone else move it. AR 58. Plaintiff said that if he did get a job now, the need to sit down and take breaks would prevent him from performing work. *Id.* He stated that standing, twisting, and turning would be an issue preventing him from retaining a job or loading a pallet. *Id.* Upon examination by Plaintiff's attorney, Plaintiff stated that he could lift twenty pounds comfortably and that he was unable to work because his back, legs, and knees prevented him from normal sitting and standing. AR 59. He said that his primary care facility was Sequoia Family Medical Center. *Id.*

Following Plaintiff's testimony, the ALJ elicited testimony from vocational expert ("VE") Stephen Schmidt. AR 59-63. The VE testified that Exhibit B-11E stated his professional experience and qualifications; he had not had any contact between himself and Plaintiff; he could be an impartial witness in the proceeding; had not had discussion concerning the merits of the case; was familiar with Social Security's definition of unskilled, semiskilled, skilled, sedentary, light, medium, heavy, and very heavy work; understood that he needed to advise the court if his opinion conflicted with the information in the Dictionary of Occupational Titles and the basis for his opinion; and he had a chance to review the exhibits and familiarize himself with Plaintiff's vocational background. AR 60-61. Plaintiff's attorney did not object to Mr. Schmidt serving as VE. AR 61. The ALJ noted that he did not find the record to support work at the SGA levels in the last 15 years. *Id.*

The ALJ then asked the VE questions regarding a hypothetical individual and asked the VE to assume an individual who would have the same age, education, and vocational background as Plaintiff. For the first hypothetical, the ALJ asked the VE to assume an individual capable of medium exertional level work who could frequently climb ramps, stairs, ladders, ropes, or scaffolds; would be able to frequently stoop and crouch; should not work in environments that would subject him to concentrated exposure to extreme cold temperatures or vibrations; would be able to perform jobs of a non-complex nature requiring the performance of no more than simple, routine tasks; and should not work in environments that would require contact with members of the general public. AR 61-62. The

1  VE testified that there would be jobs in the national economy for such an individual at the medium

2  exertion level, including: Cleaner II (DOT No. 919.687 014, medium, SVP 1, with 54,000 jobs); Hand

3  Packer, (DOT No. 920.587-018, medium, SVP 2, with 72,000 jobs); and Cleaner, Industrial (DOT No.

4  381.687-018, medium, SVP 2, with 17,000 jobs).  AR 62.  The ALJ asked if that individual would still

5  be able to perform the jobs identified if the individual could stand and/or walk for four out of eight

6  hours in an eight hour workday.  *Id.*  The VE testified that the hypothetical individual could not

7  perform those jobs and that there would be no medium work for an individual, and that the individual

8  would be restricted to light work.  *Id.*  The ALJ then asked if the individual from the first hypothetical

9  could still perform the jobs identified or other competitive employment if the individual could perform

10  at the medium level, would require time to manage symptoms and pain, would be off task from work-

11  related duties and assignments for 15% of an eight-hour workday.  AR 62-63.  The VE testified that

12  the individual could not.  AR 63.  The VE testified that his testimony was consistent with the

13  information in the DOT.  *Id.*

14        **Medical Record**

15        The relevant medical record was reviewed by the Court and will be referenced below as

16  necessary to this Court's decision.

17        **The ALJ's Decision**

18        Using the Social Security Administration's five-step sequential evaluation process, the ALJ

19  determined that Plaintiff was not disabled under the Social Security Act.  AR 18-43.  Specifically, the

20  ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of

21  August 25, 2021.  AR 24.  The ALJ identified the severe impairments of diabetes mellitus, obesity,

22  depression, and Borderline Intellectual Functioning, and noted that Plaintiff's reported seizures,

23  gastroesophageal reflux disease, enlarged liver, demyelinating disease, headaches and migraines,

24  prostate and urinary dysfunction, Vitamin D deficiency, dyspnea and cardiomegaly, and back pain and

25  occasional knee pain were not severe impairments.  AR 24-26.

26        Based on a review of the entire record, the ALJ found that Plaintiff retained the residual

27  functional capacity ("RFC") to perform medium work with the limitations that Plaintiff: could

28  frequently climb ramps, stairs, ladders, ropes, and scaffolds; could frequently stoop and crouch; should

not be in environments subjecting him to concentrated exposure to extremely cold temperatures and vibrations; could perform jobs of a non-complex nature requiring the performance of no more than simple, routine tasks, and should not work in environments requiring contact with members of the general public. AR 28. The ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" as well as "medical opinion(s) and prior administrative medical finding(s)." *Id.*

The ALJ found that Plaintiff had no past relevant work, was defined as an individual of advanced age, had at least a high school education, and that transferability of skills was not an issue because Plaintiff did not have past relevant work. AR 37. Given Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 38. The ALJ noted that examples of jobs consistent with Plaintiff's age, education, work experience, and RFC included: (1) Cleaner II (DOT No. 919.687 014, medium, SVP 1, with 54,000 jobs); (2) Hand Packer, (DOT No. 920.587-018, medium, SVP 2, with 72,000 jobs); and (3) Cleaner, Industrial (DOT No. 381.687-018, medium, SVP 2, with 17,000 jobs). *Id.* The ALJ therefore concluded that Plaintiff had not been disabled since the application date of August 25, 2021. AR 39.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's

determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff argues that the RFC is not supported by substantial evidence, as the ALJ failed to account for limitations from psychological consultative examiner Dr. Kellie R. Sulier, Psy.D's opinion that the ALJ found to be generally persuasive. (Doc. 10 at 3-8.) Specifically, Plaintiff argues that the ALJ failed to provide a corresponding limitation in the RFC to account for Dr. Sulier's limitation that Plaintiff was mildly to moderately limited in his ability to complete a normal workday or workweek without interruption from his psychiatric condition. (*Id.* at 5.)

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

"Where an ALJ accords substantial or great weight to a physician's opinion, he must either incorporate their findings into the RFC or offer an explanation for why he chose not to accept them." *Sahyoun v. Saul*, No. 2:18-CV-576-EFB, 2020 WL 1492661, at *3 (E.D. Cal. Mar. 27, 2020), citing *Martin v. Comm'r of Soc. Sec. Admin.*, 472 F. App'x 580 (9th Cir. 2012) (unpublished) ("The administrative law judge (ALJ) erred when formulating Martin's residual functional capacity (RFC) because the RFC neither incorporated Dr. Steiner's opinion of Martin's work limitations nor gave specific and legitimate reasons for rejecting it.") and *Neufeld v. Berryhill*, No. 2:16-cv-03644 (VEB), 2018 WL 4739699, at *6 (C.D. Cal. Sept. 30, 2018) ("Having afforded 'great weight' to the opinions of Dr. Bartell and Dr. Loomis, the ALJ was bound to either incorporate their findings as to Plaintiff's limitations or explain why she decided not to accept them."); see also *Bain v. Astrue*, 319 F. App'x 543, 545-46 (9th Cir. 2009) (holding ALJ erred in not including consultative examining psychologist's moderate limitations in the RFC, despite specifically crediting these limitations in the opinion); *Flores v. Saul*, No. 1:18-cv-01523-SKO, 2020 WL 509098, at *5 (E.D. Cal. Jan. 31, 2020) (finding ALJ erred by assigning great weight to consultative psychologist's opinion, but failing to provide specific and legitimate reasons for rejecting significant portions of the opinion); *Wascovich v. Saul*, No. 2:18-cv-659-EFB, 2019 WL 4572084, at *3-*5 (E.D. Cal. Sept. 20, 2019) (finding ALJ erred by assigning substantial weight to consulting examiner's opinion that the plaintiff had a mild to moderate impairment in her capacity to maintain regular attendance, but failed to account for the limitation in the RFC); *Harrell v. Kijakazi*, No. 1:20-cv-00614-GSA, 2021 WL 4429416, at *4 (E.D. Cal. Sept. 27, 2021) ("The ALJ was under no obligation to accept a medical opinion he found unsupported by the record. But, having clearly stated that he was according [the physician]'s opinion great weight, the ALJ was under an obligation to account for the moderate limitations [the physician] identified irrespective of the broader reasoning in support of the RFC.").  An ALJ errs when they do not explain why they did not adopt all findings or limitations from a persuasive opinion.  *Patterson v. Comm'r of Social Sec.*, No. 2:23-cv-00635 AC, 2024 WL 4216810, at *8 (E.D. Cal. Sept. 17, 2024)

Here, in evaluating the opinion of Dr. Sulier, the ALJ summarized and reasoned as follows:

> Based on the entire encounter, Dr. Sulier diagnosed Major Depressive
> Disorder, moderate, single episode with anxious features; rule out

Borderline Intellectual Functioning; cannabis use disorder, moderate, in sustained remission; alcohol use disorder, moderate, in sustained remission; and stimulant use disorder, moderate, in sustained remission. Dr. Sulier further concluded the claimant had no significant limitations with his abilities to understand, remember, and perform simple written and oral instructions, perform work activities on a consistent basis, perform work activities without special or additional supervision, or accept instructions from supervisors. Dr. Sulier concluded the claimant had mild to moderate limitations with his abilities to understand, remember, and perform complex written and oral instructions due to functional impairment associated with a mood disorder which will likely periodically impair attention, concentration, and memory. He is mildly limited with his ability to maintain regular attendance in the workplace due to symptom associated with psychiatric conditions such as nervousness, disrupted sleep, and feelings of sadness or hopelessness which will likely impair attendance. With his ability to complete a normal workday or workweek without interruptions resulting from the claimant's psychiatric condition, the claimant is mildly to moderately limited due to symptoms associated with the psychiatric conditions such as nervousness, disrupted sleep, and feelings of sadness or hopelessness which will likely impair performance. With his ability to interact with coworkers and with the public, the claimant is moderately limited due to severity of symptoms associated with his psychiatric conditions such as nervousness, disrupted sleep, and feelings of hopelessness or sadness. There is historic evidence of emotional deterioration in the workplace and the claimant would likely require additional breaks in order to manage symptoms exacerbated by the stress of social interactions. With regard to his ability to deal with the usual stresses encountered in competitive work environments, the claimant is moderately limited due to the severity of symptoms associated with his psychiatric conditions, such as nervousness, decreased stress tolerance, disrupted sleep, and feelings of hopelessness or sadness. The claimant would likely have difficulty adjusting to rapid changes in the workplace. However, the claimant is capable of managing funds as evidence by his history of appropriate financial management. In summary, Dr. Sulier stated the claimant presented as polite and depressed. He has Major Depressive Disorder with anxious distress. Functional impairment associated with his psychiatric condition will likely periodically impair his attention, concentration, and memory. Attendance and performance will likely be interrupted. His symptoms will likely impair his ability for social interaction and stress tolerance. There is historic evidence of emotional deterioration in the workplace. The claimant is capable of managing his own funds. Given the claimant's psychiatric and treatment history and the results of this evaluation, it appears that the mental health symptoms may be chronic in nature. Given the current diagnosis and absence of past mental health involvement, it appears that the claimant's current mental health condition may not abate on its own within a one-year

period. The claimant will likely benefit from starting therapy and starting psychiatric medication to address and manage current mental health symptoms. Overall, the claimant's prognosis is fair with treatment compliance and comprehensive treatment (Exhibit B7F, pp. 5-6).

Dr. Sulier's opinion is generally persuasive as it is based on a personal examination and extensive clinical history. Dr. Sulier also considered the claimant's subjective complaints and explanations of symptoms as they have manifested. However, parts of the opinion appear to be self-contradicting, such as objective examination findings for impaired ability to perform calculations, including counting change, but concluding the claimant can manage funds. However, the claimant reported in his Function Report that he is able to count change at the store (see, Exhibit B4E). In addition, the claimant also reported no problems with getting along with others, completing tasks, following instructions, paying attention, or getting along with authority figures and others (see, Exhibit B4E). Nonetheless, the opinion regarding functional limitations is based on a professional psychiatric assessment and such projected limitations are expected to be supported by training and experience in matters of psychiatric disorders. Accordingly, I find Dr. Sulier's opinion generally persuasive and supportive of moderate limitations under the paragraph B criteria and limitations to non-complex jobs requiring the performance of no more than simple, routine tasks without requiring contact with members of the general public. I discount Dr. Sulier's implication that the claimant would be more limited with coworker interaction because the claimant reports he is able to socialize with others, get along with family and friends, but becomes nervous around the public (see, Exhibit B4E).

AR 35-36.

In a medical source statement from a July 7, 2022 exam, Dr. Sulier summarized Plaintiff's history, mental status exam results, and diagnosed Major Depressive Disorder, moderate single episode with anxious distress; Borderline Intellectual Functioning; Cannabis Use Disorder, moderate, in sustained remission; Alcohol Use Disorder, moderate, in sustained remission; Stimulant Use Disorder, moderate, in sustained remission.  AR 466-71.  In a section regarding Plaintiff's current work-related abilities, Dr. Sulier opined that Plaintiff was "not significantly limited" in the "ability to understand, remember, and perform simple written and oral instructions"; was "mildly to moderately limited due to functional impairment associated with mood disorder" in his "ability to understand, remember, and perform complex written and oral instructions"; was mildly limited "With maintaining regular attendance in the workplace"; was not significantly limited with his "ability to perform work

10

activities on a consistent basis"; was not significantly limited with the "ability to perform work activities without special or additional supervision"; was mildly to moderately limited with the "ability to complete a normal workday or workweek without interruptions resulting from the claimant's psychiatric condition"; was not significantly limited with "ability to accept instructions from supervisors"; was moderately limited with the "ability to interact with coworkers and the public"; was moderately limited with the "ability to deal with the usual stresses encountered in competitive work environment"; and was "capable of managing funds."  AR 470-71.

The RFC did not completely account for the opined limitations in Dr. Sulier's opinion.  The limitation to "jobs of a non-complex nature requiring the performance of no more than simple, routine tasks, and should not work in environments requiring contact with members of the general public" address some of Dr. Sulier's limitations, but does not address the limitation that Plaintiff was mildly to moderately limited with the "ability to complete a normal workday or workweek without interruptions resulting from the claimant's psychiatric condition" AR 34-36, 471.  The ALJ's analysis explains that the ability to manage funds is self-contradicting and discounts the limitations regarding coworker interaction based upon Plaintiff's reporting that he socializes with others and gets along with family and friends.  AR 36.  However, the ALJ does not specify why he would discount the mild to moderate limitations regarding completion of a workday or workweek without interruptions.  AR 35-36.  Absent explanation for failing to account for this limitation, the ALJ's RFC determination is not supported by substantial evidence.  *Sahyoun*, 2020 WL 1492661, at *3; AR 28, 34-36, 470-71.

Defendant argues that the ALJ partially discounted Dr. Sulier's opinion as only "generally persuasive."  (Doc. 14 at 6-7.)  Defendant contends that the use of the "generally" qualifier "indicates that it applied to the opinion as a whole" and "properly explained why he did not adopt Dr. Sulier's opinion in full" by noting certain contradictions."  (*Id.*)  However, in a similar case in which an ALJ found a medical opinion "generally persuasive," the examining court found that the ALJ was still required to account for all opined limitations.  *David C. v. Comm'r of Soc. Sec.*, No. 23-cv-0655-WQH-MMP, 2024 WL 3596856 (S.D. Cal. July 31, 2024), *report and recommendation adopted*, No. 23-cv-0655-WQH-MMP, 2024 WL 4184086 (S.D. Cal. Aug. 16, 2024).  The court there found that, despite the "generally persuasive" qualifier, it was harmful error for the ALJ to address some but not

all of the opined limitations.  *Id.* at *14 ("The problem is, apart from rejecting Dr. McCarthy's opined limitation as to public interaction, the ALJ did not specifically address any other of Dr. McCarthy's opined limitations.")  That court concluded that "because it is not clear which of [the doctor's] opinions the ALJ found persuasive, the Court cannot determine whether the ALJ's RFC determination was complete."  *Id.*

Here it is also unclear as to which of Dr. Sulier's limitations the ALJ discounted.  AR 34-36. The ALJ notes that "parts of the opinion appear to be self-contradicting, such as objective examination findings for impaired ability to perform calculations, including counting change, but concluding the claimant can manage funds…" and discounts the coworker interaction limitation, but does not specify which other parts are self-contradicting and does not address the opined mild to moderate limitation regarding completion of a workweek without interruption.  AR 34-36, 471.  The qualifier that the opinion was "generally" persuasive therefore does not override the requirement that the ALJ address all opined limitations.  As the ALJ failed to address some limitations while accounting for others in a persuasive opinion, Defendant's argument fails.

Defendant next argues that the RFC limiting Plaintiff to simple, routine tasks also reflected the ALJ's evaluation of Dr. Sulier's opined limitations.  (Doc. 14 at 7-9.)  In support, Defendant cites cases finding that "a moderate limitation in the ability to complete a workday or workweek without interruption is consistent with and properly captured by a limitation to simple repetitive task." *Rodriguez v. Colvin*, No. 1:13-CV-01716-SKO, 2015 WL 1237302, at *6 (E.D. Cal. Mar. 17, 2015); *Larkin v. Saul*, 819 F. App'x 535, 538 (9th Cir. 2020) (deferring to the ALJ's reading of a medical opinion limitation as the ALJ translated that plaintiff's condition "into the only concrete restrictions available to him."); *Yasuda v. Comm'r of Soc. Sec. Admin*., 473 F. App'x 787, 788 (9th Cir. 2012) ("ALJ did not err in relying on Dr. Fair's and Dr. Gallucci's translations of Yasuda's limitations (including the moderate limitations in areas of sustained concentration and persistence identified by Dr. House) into concrete work restrictions.").

Courts in this circuit have split on whether RFC limitations to simple/routine tasks with limited public contact account for all moderate non-exertional limitations.  *Macias v. Saul*, No. 1:19-cv-01187-BAM, 2021 WL 856423, at *6 (E.D. Cal. Mar. 8, 2021) (collecting cases and noting that

"Courts have rejected the argument that a similar limitation to simple tasks in the RFC adequately accounts for moderate limitations in the ability to maintain regular attendance or complete a normal workday.").  Courts within this district have recently noted that the district court case law "tends to favor the view that a restriction to simple/routine tasks with limited public contact does not account for the moderate limitations… identified in interacting with supervisors and peers, handling work related stressors, maintaining regular attendance, and completing a normal workweek without interruption." *Harrell*, 2021 WL 4429416, at *6; *Lamar v. Comm'r of Soc. Sec.*, No. 1:24-cv-00504-EPG, 2025 WL 318294, at *4 (E.D. Cal. Jan. 28, 2025) (noting split and finding that limitations in RFC did not account for all moderate limitations opined by physician); *Berenisia Madrigal v. Saul*, No. 1:18-cv-01129-SKO, 2020 WL 58289, at *5-6 (E.D. Cal. Jan. 6, 2020) (finding that ALJ's RFC of simple, routine tasks with limited peer and public contact did not account for opined limitations in "completing a normal workday or work week due to her psychiatric condition, moderate difficulties dealing with stress and changes encountered in the workplace, and an up to moderate likelihood that she would emotionally deteriorate in a work environment").  The instant case is also distinguishable from the facts of *Larkin* and *Yasuda*, as the doctor in *Larkin* vaguely opined "some limitation with keeping a regular workweek" and the doctor in *Yasuda* opined "moderate limitations in areas of sustained concentration and persistence," whereas here Dr. Sulier opined mild to moderate limitations in Plaintiff's ability to complete a normal workday or workweek without interruptions.  *Larkin*, 819 F. App'x at 537; *Yasuda*, 473 F.App'x at 788.

Defendant suggests that this line of cases is of limited relevance here as those cases largely dealt with moderate limitations rather than the mild to moderate limitations opined by Dr. Sulier. (Doc. 14 at 9-11.)  However, this line of cases includes and is built upon cases involving mild to moderate limitations.  *See Wascovich*, 2019 WL 4572084, at *3-*5 (finding ALJ erred by assigning substantial weight to consulting examiner's opinion that the plaintiff had a mild to moderate impairment in her capacity to maintain regular attendance but failed to account for the limitation in the RFC).  Additionally, Defendant does not point to further authority suggesting that simple/routine tasks account for mild to moderate limitations and instead cites a case in which a court examined moderate limitations.  *See Rodriquez*, 2015 WL 1237302, at *6.  Defendant's argument that the simple, routine

1    task RFC restriction accounted for the mild to moderate completion of workweek limitation is

2    therefore unavailing.

3         Defendant further argues that the ALJ appropriately based Plaintiff's RFC upon all relevant

4    evidence and opinions rather than a single opined limitation, pointing to findings from Dr. John

5    Petzelt.  (Doc. 14 at 6-9.)  Defendant also argues that the ALJ's discounting of Dr. Sulier's opinion as

6    "self-contradicting" extends to the apparent contradiction between Dr. Sulier opining mild to moderate

7    limitation in the ability to complete a normal workday or workweek and Dr. Sulier finding that

8    Plaintiff was not significantly limited in the ability to perform work activities on a consistent basis.

9    (*Id.* at 6, 8.)  However, this reasoning was not advanced by the ALJ and is only now articulated by

10   Defendant.  The Ninth Circuit has noted that "[l]ong-standing principles of administrative law require

11   us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not

12   post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."  *Bray v.*

13   *Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).  The Court therefore may not

14   attempt to intuit the ALJ's reasoning in discounting the mild to moderate limitation from Defendant's

15   current interpretations.

16        Defendant also argues that, given the mild to moderate limitation, the ALJ appropriately

17   crafted an RFC reflecting the abilities of a person with mild limitations, and that the Court should

18   defer to the ALJ's interpretation of the evidence.  (Doc. 14 at 10-11.)  However, the existence of a

19   mild to moderate limitation does not change the requirement that the ALJ account for all opined

20   limitations in a persuasive opinion.  *Sahyoun*, 2020 WL 1492661, at *3; *Wascovich*, 2019 WL

21   4572084, at *3-*5; *Anne B. v. Kijakazi*, No. 22-cv-07012-TSH, 2023 WL 8039639, at *11 (N.D. Cal.

22   Nov. 20, 2023) (finding that ALJ may have "erred in neither including Dr. Dixit's determination of

23   mild to moderate limitation in interacting with the public nor providing a reason for not incorporating

24   it in the RFC.").  Defendant's argument is therefore unsuccessful.

25        **B. Remedy**

26        Plaintiff argues that this case should be remanded under the fourth sentence of 42 U.S.C. §

27   405(g) with instructions to award benefits, arguing that there are no outstanding issues to resolve.

28   (Doc. 10 at 9-10.)  Defendant responds that the "ordinary remand rule" requires that the case be

1    remanded for further administrative proceedings rather than for immediate payment of benefits.  (Doc.

2    14 at 12.)

3          The Court disagrees with Plaintiff's argument that there are no remaining issues to resolve and

4    that the record has been fully developed.  The decision whether to remand for further proceedings or

5    order an immediate award of benefits is within the Court's discretion.  *See Harman v. Apfel*, 211 F.3d

6    1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative

7    proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison v.*

8    *Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  As it is not clear that "further administrative proceedings

9    would serve no useful purpose," remand for further proceedings is appropriate. *Id.*; *see also*

10   *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of

11   the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the

12   proper course, except in rare circumstances, is to remand to the agency for additional investigation or

13   explanation.") (internal quotes and citations omitted). On remand, the ALJ should specifically address

14   the opined limitations in Dr. Sulier's opinion.

15          ///

16          ///

17          ///

18          ///

19          ///

20          ///

21          ///

22          ///

23          ///

24          ///

25          ///

26          ///

27          ///

28          ///

15

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards.  Accordingly, IT IS HEREBY RECOMMENDED as follows:

1.    Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be GRANTED;

2.    The agency's determination to deny benefits be REVERSED; and

3.    The Clerk of this Court be directed to enter judgment in favor of Plaintiff Edward Aaron and against Defendant Leland Dudek, Acting Commissioner of Social Security.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered**.  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **March 3, 2025**              /s/ Barbara A. McAuliffe

UNITED STATES MAGISTRATE JUDGE

16